IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff**

v.

MARGARITA PEROCIER,

**Defendant(s)**

**CRIM. NO.** 08-243 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D. J.

This case charges a conspiracy to fraudulently obtain Puerto Rico medical licenses for numerous persons who allegedly failed one or more parts of the medical revalidation examination. (Docket No. 338). Before the Court is Defendant Margarita Perocier's Motion to Suppress statements she provided during interviews with government agents and prosecutors, and to dismiss Count Fifty-Seven of the superseding indictment. (Docket No. 388). The motion was referred to Magistrate Judge McGiverin for a Report and Recommendation. (Docket No. 389). Upon Magistrate Judge McGiverin's recommendation to dismiss Defendant's motion (Docket No. 425), the Defendant filed her objections (Docket No. 444), which we now address.

Defendant made no objection to the Magistrate Judge's findings of fact. Therefore, the Court takes the facts from the learned Magistrate's Report and Recommendation.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from the testimony heard during the evidentiary hearing, and the exhibits admitted into evidence. During the evidentiary hearing, the court heard testimony from Defendant Margarita Perocier ("Perocier"), Wilfredo Rodríguez-Rodríguez ("Rodríguez"), Carmen Martínez-Diez, Sylvette Mendez, and Food and Drug Administration ("FDA") Special Agent ("SA") Ralph Culkin.

Defendant Perocier, 71 years old, is a physician who has no legal training. In September of 2007 she was living in Arizona. On or about the 26th of that month, she received a call from a federal agent telling her she needed to appear in the Federal Building in Puerto Rico regarding a matter concerning her medical license. Perocier claimed that the agent never informed her that the matter involved a criminal investigation, that her attendance was voluntary, or that she should bring an attorney. As it happened, Perocier was already traveling to Puerto Rico regarding a real estate transaction.

The next morning, the 27th, she and her husband, Wilfredo Rodríguez-Rodríguez, a retired police officer, went to the Housing and Urban Development ("HUD") offices in Puerto Rico and

attended to the real estate matter. While at HUD, she received a call from SA Culkin around 11:00a.m. informing her that he was waiting for her at the Federal Building. She agreed to meet him there and asked for directions. She and her husband drove to the Federal Building, where she was met by an agent and escorted to a waiting room. There, she provided her driver's license and filled out a form. After a short time, she was escorted to a conference room in the Office of the United States Attorney. The government elicited testimony, which the court finds credible, that it was standard practice at the United States Attorney's office to escort visitors from the waiting area to the meeting rooms. Perocier claimed that her husband was not allowed to accompany her because he did not have an identification, which he had left in the car, but admitted that at that moment she did not ask that he be allowed to attend because she believed the meeting concerned her medical license.

    Waiting for her in the conference room were SA Culkin, Assistant United States Attorneys ("AUSA"s) José Pizarro and José Ruíz, and at least one agent. Perocier, who is dark-skinned, testified that everyone in the room except her was white. She sat down and SA Culkin started explaining about an investigation into physicians in Puerto Rico. She was told that the meeting concerned a scheme of fraud at the Puerto Rico Board of Medical Examiners, and that she was involved. AUSA Ruíz told

her that there was information that she had helped persons as political favors. According to Perocier, AUSA Ruíz asked her to identify the persons and politicians she had helped, and said that he would put her in jail for thirty years if she refused to cooperate, but would ask the judge for leniency if she cooperated. SA Culkin, on the other hand, testified he did not remember AUSA Ruíz making any such threats or promises of leniency. Perocier was told that Yolanda Rodríguez had implicated her. Yolanda Rodríguez was then brought into the room briefly, accompanied by her attorney. Perocier said that she wanted to cooperate but could not because she had done nothing illegal; she denied that she participated in the events the agents were describing. At some point, she requested that her husband be brought into the room. He eventually was brought in, and AUSA Ruíz explained to him that his wife was involved in a scheme to commit fraud and that he requested her cooperation. Rodríguez said he would speak to her about it, and Ruíz gave her until the following Monday to respond. Perocier asked if she could go back to her work in Arizona, and was told that she could. She then left the room with her husband, and they were escorted down to the waiting room where she picked up her identification and departed.

   The whole meeting lasted between one and one and a half hours. Perocier testified that at all times during the meeting

the agents treated her courteously, but that she felt intimidated by AUSA Ruíz, who spoke in a loud voice. However, she did not make any complaint regarding AUSA Ruíz's conduct to the United States Department of Justice or to any other entity. She further explained that she suffers from diabetes and high blood pressure, and that she felt discriminated against, being the only dark-skinned person in the room. It is undisputed that she was not provided Miranda warnings prior to or during the interview. At no time was Perocier handcuffed, nor did the agents involved display their weapons.

On August 1, 2007, and prior to the events described above, the grand jury had returned an indictment related to alleged fraud at the Puerto Rico Medical Examiners Board in Criminal Case No. 07-302. The original indictment did not name Perocier as a defendant. She was included as a defendant in the superseding indictment returned on October 29, 2007.

**STANDARD OF REVIEW**

Standard for Reviewing a Magistrate Judge's Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b) and Local Rule 72, a district court may refer dispositive motions to a United States magistrate judge for a report and recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely

affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States v. Mercado Pagan, 286 F. Supp. 2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Rivera-De-Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Alamo Rodriguez, 286 F. Supp. 2d at 146 (citing Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985)). However, if the affected party fails to timely file objections, the district court can assume that they have agreed to the magistrate judge's recommendation. Id.

**DISCUSSION**

Motion to Suppress

Magistrate Judge McGiverin recommends that Defendant's Motion to Suppress be denied given that at the time the questioning took place at the U.S. Attorney's office she was not in "custody", thus no Miranda warnings were required. Thompson v. Keohane, 516 U.S. 99, 112 (1995). The Magistrate Judge concluded that the totality of the circumstances did not warrant

a reasonable belief that Defendant was not at liberty to terminate the interrogation and leave. Id. Magistrate Judge McGiverin also relied on United States v. Pagán-Santini, a case factually similar to Defendant where Judge Salvador Casellas's finding that the defendant in that case was not in custody for Miranda purposes, was affirmed on appeal. U.S. v. Pagán-Santini, 451 F.3d 258 (1st Cir. 2006).

As Defendant correctly notes in her blanket objection, Pagán-Santini is distinguishable from the case at bar. Before being interviewed by authorities, defendant Pagán-Santini was informed that he had not been indicted and that he would not be arrested if he agreed to meet with government agents. Pagán-Santini, 451 F.3d at 262. Here, Perocier received no assurances of any kind, and was pressured to attend the meeting.

Though far from an obvious choice, the Court agrees with the Magistrate Judge's finding that the circumstances surrounding Defendant Perocier's interview were not deserving of Miranda warnings. The testimonial evidence heard at the suppression hearing showed that Defendant Perocier was not questioned in a familiar or neutral environment and that she was surrounded by at least four government officials. On the other hand, the interview was relatively brief, she was told that she could return to work, she was not restrained in any way and she was eventually allowed the company of her husband during the

latter part of the interview. U.S. v. Masse, 816 F.2d 805 (1st Cir. 1987)(quoting U.S. v. Streifel, 781 F.2d 953, 961 n. 13 (1st Cir. 1986). We respect the weight given to the evidence by Magistrate Judge McGiverin at the hearing, who had the benefit of live testimony, and agree that Defendant Perocier was not in custody at the time she was questioned by the agents.

The Court recognizes that a person of advanced age such as Defendant Perocier may be more easily impressionable when in the presence of unfriendly interviewers. But the facts before us today do not show a sufficiently hostile atmosphere to warrant our opinion on such a subtlety.

Defendant's Motion to Suppress is denied.

Motion to Dismiss

Defendant Perocier also moves to dismiss Count Fifty Seven of the indictment under 18 U.S.C. § 1001(a)(2) which imposes criminal penalties on "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. §1001(a)(2). The charge was levied against Defendant Perocier for her remarks in

response to the government agents' request for cooperation on her part.[1]

According to her Motion to Dismiss, Defendant Perocier's initial argument is as follows. The false statements she is charged with making were predicated on honest services fraud counts that the Supreme Court has found not to be within the reach of 18 U.S.C. § 1346. U.S. v. Skilling, 130 S. Ct. 2896 (2010).  Shortly after Skilling was handed down, the honest services mail fraud counts against Defendant Perocier were voluntarily dismissed by the U.S. Since the offenses underlying the statement she is being charged for have been dismissed, the statement is no longer "material" nor elicited in relation to "any matter within the jurisdiction" of the U.S., within the meaning of § 1001(a)(2). Count Fifty Seven should thus be dismissed

Magistrate Judge McGiverin recommends that the Court deny Defendant's motion to Dismiss. U.S. v. Skilling indeed held that that the crime of honest services wire fraud, 18 U.S.C. § 1346, covers only fraudulent schemes involving bribery or kickbacks. Skilling, 130 S. Ct. at 2931. However, Defendant Perocier's blanket denial of any involvement in the fraudulent scheme encompassed matters and offenses beyond the use of the U.S. Mail

---

[1] At the government agents' request for her to cooperate, Defendant Perocier responded that though she would like to cooperate, she was unable to because she had done nothing illegal and denied any participation in the fraudulent licensing scheme that the agents described.

for bribery and kickbacks. The indictment also charges that the mail was used for the solicitation, delivery and use of fraudulently issued medical licenses. Given that the government's investigation was broad in terms of various fraudulent uses of the U.S. Postal Service, Defendant Perocier's statements were "material" to, and influential upon that investigation.

Defendant Perocier objects to the Magistrate Judge's recommendation on three grounds, one is relatively novel.

First, Defendant argues that since she had no duty to cooperate with the government, she cannot be indicted for whatever reason she gave the agents for not cooperating.

Defendant is correct that she had no duty to cooperate. She is also correct that the reason for her denial to cooperate is, generally, not punishable. What Defendant cannot do, is lie. Brogan v. U.S., 522 U.S. 398, 404 (1998). We are not concerned with Defendant's statement that she did nothing illegal; legal conclusions can only be drawn by a court. However, Defendant's statement that she was not involved in the licensing scheme, falls well within the bounds of deceit and 18 U.S.C. § 1001(a)(2). Defendant had no obligation to cooperate, nor did she have the need to be untruthful; silence would have been preferable.

Defendant's second objection is a repeat of what she earlier argued were the consequences of the Skilling decision. She again posits that the Magistrate Judge erred in not dismissing the charge because it is predicated on the honest services fraud counts which were earlier dismissed as a consequence of Skilling.

We again side with the Magistrate Judge and agree that Defendant's broad statement of no involvement encompasses dishonesty over matters beyond the dismissed counts. Use of the mail for sending fraudulently obtained medical licenses is but one example.

Finally, Defendant again repeats her argument that the statement she is being charged for amounted to a mere "exculpatory no", and should thus not be prosecuted under 18 U.S.C. § 1001. She contends that the Magistrate Judge's reliance on Brogan v. U.S., 522 U.S. 398 (1998), for denying her Motion to Dismiss is misplaced. She argues that although Brogan does not create an "exculpatory no" exception to 18 U.S.C. § 1001, it also does not automatically allow a prosecution where a mere exculpatory statement is given.

We concede that Brogan does not automatically allow a prosecution under 18 U.S.C. § 1001 were only a denial of involvement is in question; it cannot. Courts do not *allow* prosecutions. Congress does, and it has allowed one against

Defendant, or anyone who makes a false statement that is material to a government investigation. 18 U.S.C. § 1001. As espoused in Brogan, the language of 18 U.S.C. § 1001 is unequivocal and allows no exception. We thus agree with the Magistrate Judge on this point as well.

Defendant cites a few cases where the First Circuit had found some exception to 18 U.S.C. § 1001. These cases however were decided before Brogan, and on that issue they no longer seem to hold water.

Finally, the contention that a prosecution under 18 U.S.C. § 1001 for a mere "exculpatory no" goes against the U.S. Attorney's own internal policy is irrelevant. The Court is not one to call on the U.S. Attorney's internal inconsistencies, however obvious they may be.

## CONCLUSION

For the reasons stated afore, Defendant's motions are denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of June, 2011.

S/Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge